BAY HARBOUR MANAGEMENT LLC, Plaintiff–Appellant,

v.

Jay CAROTHERS, Coleen Colreavy, Robert Webber, Mark Scott, Deloitte & Touche USA LLP, & John Doe "1–20," Defendants–Appellees.

---

2. Indeed, Ajdin had been informed that Vulaj    was no longer practicing law.

Xerion Partners I, L.L.C., Xerion Partners II Master Fund Limited, Cohanzick Credit Opportunities Master Fund, Ltd., Dalton Investments, L.L.C., & SOF Investments, L.P., Plaintiffs–Appellants,

v.

Resurgence Asset Management, L.L.C., Jay Carothers, Mark Scott, Coleen Colreavy, Robert Webber, Byron Haney, & Deloitte & Touche USA LLP, Defendants–Appellees,

Michael Carleton, Norman Matthews and Ben Evans, Defendants.

Nos. 07–1124–cv, 07–1157–cv.

United States Court of Appeals, Second Circuit.

June 24, 2008.

Jennifer L. Saffer (Scott A. Lucas, J.L. Saffer, on the brief), New York, NY, for Plaintiff–Appellant Bay Harbour Management LLC.

Jeffrey A. Mitchell (Marc S. Dreier, Brian Dunefsky, Dreier LLP; Kurt B. Arnold, Jason A. Itkin, Arnold & Itkin LLP, Houston, Texas, on the brief), Dreier LLP, New York, NY, for Plaintiffs–Appellants Xerion Partners I, L.L.C., Xerion Partners II Master Fund Limited, Cohanzick Credit Opportunities Master Fund, Ltd., Dalton

Investments, L.L.C., & SOF Investments, L.P.

Robert H. Baron (Jeffrey B. Korn, on the brief), Cravath, Swaine & Moore LLP, New York, NY, for Defendants–Appellees Jay Carothers, Mark Scott, Coleen Colreavy, & Robert Webber.

John A. Neuwirth (Joseph S. Allerhand, Bradley R. Aronstam, Michele C. Lamberti, on the brief), Weil, Gotshal & Manges LLP, New York, NY, for Defendants–Appellees Resurgence Asset Management, L.L.C. & Byron Haney.

William R. Maguire (David W. Wiltenburg, Sarah L. Cave, on the brief), Hughes Hubbard & Reed, New York, NY, for Defendant–Appellee Deloitte & Touche USA LLP.

PRESENT: Hon. CHESTER J. STRAUB, Hon. REENA RAGGI, Circuit Judges, and Hon. WILLIAM K. SESSIONS III, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Bay Harbour Management LLC ("Bay Harbour") and Plaintiffs–Appellants Xerion Partners I, L.L.C., Xerion Partners II Master Fund Limited, Cohanzick Credit Opportunities Master Fund, Ltd., Dalton Investments, L.L.C., and SOF Investments, L.P. (collectively, "Xerion") appeal from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*), entered on February 23, 2007, jointly dismissing all of their claims asserted against Defendants–Appellees Jay Carothers, Mark Scott, Coleen Colreavy, Robert Webber (collectively, the "individual Defendants–Appellees"), Resurgence Asset Management, L.L.C., Byron Haney (collectively, "Resurgence"), and Deloitte &

---

* The Honorable William K. Sessions III, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

Touche USA LLP ("Deloitte").[1] *See Xerion Partners, I LLC v. Resurgence Asset Management, LLC,* 474 F.Supp.2d 505 (S.D.N.Y.2007). We ordered that the two cases be heard in tandem here.

All of Bay Harbour and Xerion's claims arise from their investment in high-yield or "junk" bonds issued by Levitz Home Furnishings, Inc. ("LHFI") less than one year prior to LHFI's filing for Chapter 11 bankruptcy protection. Before the District Court, Defendants–Appellees moved to dismiss Plaintiffs–Appellants' claims for failing to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, and for failing to state a claim for relief, as required by Federal Rule of Civil Procedure 12(b)(6). We assume the parties' familiarity with the factual background and issues on appeal. For the reasons that follow, we affirm the decision of the District Court.

## I. Securities Fraud and Common Law Fraud Claims

We have instructed that a claim asserted under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b–5 ("Rule 10b–5"), must allege that the defendants: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 172 (2d Cir.

2005), *cert. denied,* 546 U.S. 935, 126 S.Ct. 421, 163 L.Ed.2d 321 (2005). To satisfy Federal Rule of Civil Procedure 9(b)'s requirement that a complaint alleging fraud state the "circumstances constitute fraud ... with particularity," a securities fraud claim "based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007). In addition, we have interpreted PSLRA's pleading standards pertaining to the defendant's intent to require the plaintiff to allege "facts [either] (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Here, the securities fraud claims asserted by Bay Harbour and Xerion are based on alleged statements by LHFI officers in the Offering Circular ("OC") or during a "Road Show" presentation associated with the company's November 2004 debt offering.[2]

### A. Material Misrepresentations

■ On appeal, Bay Harbour and Xerion argue that the District Court erroneously concluded that they had failed to plead, with the requisite particularity, facts supporting a jury's inference that LHFI had made material misrepresentations in the OC or the related Road Show.[3] Spe-

---

**1.** Only Xerion asserts a claim against Resurgence and Haney.

**2.** Both Bay Harbour and Xerion incorporate the contents of the OC in their pleadings by reference, and the District Court properly considered the OC as well as the facts alleged in the amended complaints in deciding Defen-

dants–Appellees' motions to dismiss. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

**3.** As the District Court concluded that Bay Harbour had made particularized allegations regarding LHFI's inventory moratorium and pre-offering vendor alienation and their rela-

cifically, Bay Harbour contends that its allegations of inaccurate, pre-offering valuations of LHFI's leasehold interests and goodwill, as purportedly evidenced by "massive write-downs" of those interests approximately five months after the offering, satisfy the heightened pleading standards of Rule (9b) and the PLSRA.[4] Xerion relies not only on similar allegations regarding such write-downs but also on its allegation that LHFI had not, as allegedly represented during a Road Show presentation, performed any "recent" valuation of these assets at the time of the offering; instead, the assets had been valued at least three years previously.

Bay Harbour and Xerion's arguments on this issue fail on appeal. Before this Court, both Bay Harbour and Xerion simply repeat their basic allegations that the individual Defendants–Appellees must have known, before the offering, that the OC contained inaccurate valuations of LHFI's leasehold interests and goodwill because later financial reports contained lower valuations. However, the District Court carefully considered these same allegations in reviewing Bay Harbour and Xerion's complaints and could divine noth-

ing more from them than a mere theory of "fraud by hindsight," *i.e.*, allegations of fraud based only on the facts that the issuer devalued certain assets after the sale of its securities and that the issuer did not apply this devaluation retroactively to any period before the sale. *See Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir.2000) ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000). Like the District Court, we interpret both parties' allegations regarding the leasehold interests and goodwill to comprise nothing more than a "fraud by hindsight" theory, which we have held is not actionable in this Circuit.

As to Xerion's more specific allegation concerning a statement by Scott, Carothers and Colreavy that the valuation of LHFI's leasehold interests had been "recently performed," there is no support for the argument that this statement—when read in conjunction with the OC—was false.[5] While Xerion might interpret the

---

tion to statements in the OC, including EBITDA figures, Bay Harbour's challenge to the District Court's conclusions regarding its allegations of misstatements by LHFI is limited only to the issues of LHFI's leasehold interests and goodwill. Xerion, in contrast, challenges all of the District Court's conclusions regarding its allegations of LHFI misstatements because the District Court concluded that Xerion had failed to plead any of those allegations with particularity.

4. In its brief, Bay Harbour also challenges what it characterizes as the District Court's improper requirement that Bay Harbour produce "specific documentary evidence" that the statements in question by LHFI were false when made. The District Court imposed no such requirement. Instead, in articulating an alternative basis for dismissing the fraud claims based on valuations of LHFI's lease-

hold interests and goodwill, the District Court concluded that Bay Harbour and Xerion had failed to plead scienter adequately. In doing so, the District Court noted that both Plaintiffs–Appellants had failed to "identify a single specific report" indicating that any of the Defendants–Appellees knew and concealed the "true" state of these assets. As we concur with the District Court's reasoning regarding the alleged falsity of the statements at issue, we need not and do not reach the issue of scienter for these particular claims.

5. Xerion also argues that the District Court "simply ignored" its allegations regarding the timing of the leaseholds valuations. In its opinion, the District Court acknowledged these allegations but did not explicitly analyze them. We review them here to determine whether this possible oversight is reversible error. *Cf. Thomas v. City of New York,* 143

alleged statement, in isolation, to mean that LHFI had conducted an entirely new evaluation of the leasehold interests shortly before the Road Show, the OC states that $73 million figure represented "the value associated with the acquisition of Levitz operating and capital leases acquired at rents below market value, as evaluated at the date of acquisition," which were "amortized by the straight-line method" in subsequent years. Indeed, the OC also specified the amortization expenses for fiscal years 2002, 2003 and 2004. Despite Xerion's bare allegation that the "recently performed" language was a false statement, the OC explains, in some detail, the method used to evaluate LHFI's leasehold interests. Both we and the District Court may consider the contents of documents referenced in the Xerion's amended complaint in considering the Defendants–Appellees' motion to dismiss. *See Kramer,* 937 F.2d at 773. After considering Xerion's allegations in the context of the OC, we conclude that there is no support for the specific allegation that LHFI had falsely stated that the leasehold interests valuation had been "recently performed." [6]

### B. Scienter

For the purpose of Defendants–Appellees' motion to dismiss, the District Court assumed that Bay Harbour had alleged sufficient facts with particularly regarding LHFI's inventory manipulation and vendor alienation—actions that, according to Bay Harbour's theory, resulted in LHFI making materially misleading statements, including its reported EBITDA figures. However, the District Court also concluded that Bay Harbour had failed to plead adequately the requisite scienter of Defendants–Appellees in making these statements, and Bay Harbour challenges this conclusion on appeal.[7] We have held that a securities fraud plaintiff's scienter allegations must "give rise to a strong inference of fraudulent intent," and that such a plaintiff may establish the requisite intent either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290–91 (2d Cir. 2006) (internal quotation marks and citations omitted). In addressing the first method of alleging intent, the District Court concluded that Bay Harbour had offered no more than "general allegations of economic self-interest" and allegations, pled on only information and belief but lacking particularized facts, that the individual Defendants–Appellees simply wished to conceal prior illegal activity. We have held that such broad allegations in the context of securities fraud claims are not sufficiently particularized to survive a motion to dismiss. *See Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir.2001)

F.3d 31, 37 (2d Cir.1998) (holding that a "district court's apparent error in relying on [an] outside affidavit" in dismissing the plaintiff's claims was harmless because such dismissal could be justified with no reliance on the affidavit).

6. Although Xerion also alleges other material misrepresentations, such as those concerning business strategy, inventory manipulation, and vendor relations, we affirm the dismissal of the claims based on these other allegations for the reasons stated by the District Court.

7. In its brief, Xerion also argues that the District Court erroneously concluded that it had failed to plead scienter. However, as we conclude that the District Court did not err in concluding that Xerion had failed to plead, with the requisite particularity, facts sufficient to show that Defendants–Appellees had made material misstatements in the OC or during the Road Show, we need not and do not reach this alternative basis for the District Court's dismissal of Xerion's claims.

("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."); *see also* 15 U.S.C. § 78u–4(b)(1) (requiring, where a securities fraud plaintiff alleges a materially misleading statement on "information and belief," that such allegation be accompanied with particularized facts "on which that belief is formed"). On appeal, Bay Harbour has failed to identify any sufficiently particularized allegations of scienter in its second amended complaint that the District Court overlooked.

■ Alternatively, Bay Harbour relies on *Novak*, 216 F.3d at 312, to argue that "inventory manipulation of the kind [alleged] here is inherently wrong, and only comes to pass as a result of intentional misconduct or extreme recklessness." To prove intent based on a theory other than motive-and-opportunity, a securities fraud plaintiff must allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91. The District Court properly concluded that the allegations pleaded by Bay Harbour, including the allegation that Defendant–Appellant Carothers resigned only four months after LHFI issued the debt securities, are insufficient to demonstrate scienter on the part of Carothers or any other Defendant–Appellee. *See Novak*, 216 F.3d at 308 (requiring allegations of either "deliberate illegal behavior" or "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care' "). To the extent that Bay Harbour argues that mere allegations of intentional inventory manipulation in a securities fraud claim are *per se* sufficiently particularized to survive a motion to dismiss, neither *Novak* nor any subsequent decision of

this Court has so held. *See Kalnit*, 264 F.3d at 141 n. 5 (rejecting any argument that *Novak* created a third, independent method of proving intent for a securities fraud claim beyond the previously recognized methods of motive-and-opportunity and conscious-misbehavior-or-recklessness). We agree with the District Court that Bay Harbour's second amended complaint did not sufficiently allege scienter on the part of any Defendant–Appellee with regard to alleged inventory manipulation, vendor alienation and related misstatements.

For the same reasons set forth above, we conclude that both Bay Harbour and Xerion have failed to plead facts, with the particularity required by Federal Rule of Civil Procedure 9(b), that could give rise to a claim for common law fraud.

## II. Claims Against Deloitte

■ The District Court properly dismissed both Bay Harbour and Xerion's securities fraud, common law fraud, and professional negligence claims against Deloitte. On appeal, both Bay Harbour and Xerion simply assert, with no reference to any particularized facts in the their respective complaints, that Deloitte knew or should have known about errors in the financial statements it certified. Bay Harbour goes further, contending that Deloitte became a "*de facto* insider" in LHFI due to its work related to the debt offering. Such arguments correspond to similarly conclusory factual allegations in Bay Harbour and Xerion's pleadings regarding Deloitte's role in the offering. Specifically, both Bay Harbour and Xerion argue that Deloitte's failure to issue a "going concern" warning regarding LHFI is a sufficient basis for their § 10(b) claim, given that which Plaintiffs–Appellants allege, with no particularized facts, Deloitte to have known before the bond offering. In

these pleadings, both Bay Harbour and Xerion seek to impose liability on Deloitte based on precisely the same alleged misstatements that they attribute to the other Defendants–Appellees. For the same reasons set forth above, we conclude that both Bay Harbour and Xerion have failed to plead, with sufficient particularly, claims of securities fraud or common law fraud against Deloitte.

■ As to the claims of professional negligence against Deloitte, the District Court properly concluded that neither Bay Harbour nor Xerion can state such a claim. Neither Plaintiff–Appellant has alleged that it was actually in privity of contract with Deloitte or in a relationship with Deloitte that was "so close as to approach that of privity, if not completely. . . ." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) (emphasis omitted). We have interpreted New York law to hold that such a near-privity relationship entails some kind of "linking conduct," such as "direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other substantive communication between the parties." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir.2000) (internal quotation marks omitted). Bay Harbour and Xerion allege no such "linking conduct" in their respective complaints. Moreover, neither Plaintiff–Appellant alleges that it put Deloitte on notice that it, in particular, intended to rely on Deloitte's statements for a specific purpose. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 222 (2d Cir.2000) (citing *Credit Alliance*, 65 N.Y.2d at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110). In sum, the District Court properly dismissed

the professional negligence claims against Deloitte.

For the foregoing reasons, we AFFIRM the judgment of the District Court dismissing all claims against all Defendants–Appellees.