21-291-cv
*KBC Asset Mgmt. NV v. MetLife, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of February, two thousand twenty-two.

PRESENT:  JOSÉ A. CABRANES,
                 GERARD E. LYNCH,
                 DENNY CHIN,
                            *Circuit Judges.*

---

KBC ASSET MANAGEMENT NV,

                    *Plaintiff-Appellant*,

LABOURERS' PENSION FUND OF
CENTRAL AND EASTERN CANADA,

                    *Movant-Appellant*,

CHRISTOPHER PARCHMANN,

                    *Plaintiff*,

                    v.                                                                 21-291-cv

METLIFE, INC., STEVEN A.
KANDARIAN, JOHN C.R. HELE, and
WILLIAM J. WHEELER,

                    *Defendants-Appellees.*

1

FOR APPELLANTS:                           DOUGLAS WILENS, Robbins Geller
                                          Rudman & Dowd LLP, Boca Raton, FL
                                          (Christopher F. Moriarty, Gregg S. Levin,
                                          & Erin C. Williams, Motley Rice LLC, Mt.
                                          Pleasant, SC; David A. Rosenfeld &
                                          Michael G. Capeci, Robbins Geller
                                          Rudman & Dowd LLP, Melville, NY; Joe
                                          Kendall, Kendall Law Group, PLLC,
                                          Dallas, TX, *on the brief*).

FOR DEFENDANTS-APPELLEES:                 MAEVE O'CONNOR, Debevoise &
                                          Plimpton LLP, New York, NY (Elliot
                                          Greenfield & Michael W. Gramer,
                                          Debevoise & Plimpton LLP, New York,
                                          NY, *on the brief*).

Appeal from a January 11, 2021 order and January 12, 2021 judgment entered by the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 11, 2021 order and January 12, 2021 judgment of the District Court be and hereby are **AFFIRMED**.

Plaintiff-Appellant KBC Asset Management NV and Movant-Appellant Labourers' Pension Fund of Central and Eastern Canada appeal from an order and judgment of the District Court dismissing their claims under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. Appellants allege in their Fourth Amended Complaint ("Complaint") that Defendant-Appellee MetLife, Inc. ("MetLife") operated as a pension risk manager, such that companies with outstanding pension liabilities would transfer those liabilities to MetLife to manage. In this capacity, MetLife was responsible for locating and paying out funds once the relevant annuitants reached retirement age. Appellants allege that MetLife and Defendants-Appellees Steven A. Kandarian, John C.R. Hele, and William J. Wheeler[1] — all former MetLife executives — made materially false and misleading statements having to do with MetLife's method of locating certain

---

[1]     Although the District Court's order discusses Kandarian and Hele, it omits any mention of Wheeler whatsoever. *See, e.g.*, *Parchmann v. MetLife*, No. 18-CV-780 (SJ) (RLM), 2021 WL 320051, at *5 (E.D.N.Y. Jan. 11, 2021) (discussing "the two individual Defendants, Kandarian and Hele"). We assume that this was an oversight by the District Court and that its reasoning applies to all three individually named Appellees.

pension risk transfer annuitants (the so-called "PRT Practice"): The company would send out two letters, one when the annuitant reached age 65 and one at age 70 ½, asking the annuitant to confirm that he or she was still alive. If an annuitant failed to respond to either letter, MetLife presumed the annuitant to be deceased and funds that were earmarked for the annuitant would then be released from MetLife's "reserves" — its accounting of liabilities for future policy benefits — thereby boosting the Company's profits.

Altogether, Appellants allege that, since the PRT Practice was implemented in the 1990s, MetLife has undercounted its liability for some 13,500 annuitants, resulting in an overstatement of MetLife's profits to the tune of more than half a billion dollars. Appellants allege that Appellees are liable under the securities fraud laws for having made materially false statements concerning MetLife's financial conditions as well as its internal controls. The District Court dismissed the Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Parchmann*, 2021 WL 320051, at *7. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I.**

We review a district court's dismissal of a complaint under Rule 12(b)(6) *de novo. See Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must generally allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (internal quotation marks omitted). A complaint alleging securities fraud must also satisfy the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, which requires that the "circumstances constituting fraud" be "state[d] with particularity." Fed. R. Civ. P. 9(b). The Private Securities Litigation Reform Act ("PSLRA") further requires that a plaintiff "specify each misleading statement; set forth the facts on which a belief that a statement is misleading was formed; and state with particularity facts giving rise to a

3

strong inference that the defendant acted with the required state of mind." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (cleaned up); *see* 15 U.S.C. § 78u-4(b)(1), (2).

## II.

We conclude that Appellants' securities fraud claims fail because they have not adequately alleged scienter, *i.e.*, that the Appellees acted either intentionally or recklessly to deceive, manipulate, or defraud. *See Novak v. Kasaks*, 216 F.3d 300, 306, 312 (2d Cir. 2000). To adequately plead scienter under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). To allege the required strong inference of scienter, a plaintiff "must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328 (2007). In doing so, a district court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326. A plaintiff can satisfy the scienter requirement "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (internal quotation marks omitted).

Moreover, where — as here — a defendant is a corporation, a plaintiff must allege "facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). A strong inference of corporate scienter can be raised by "imput[ing] it from an individual defendant who made the challenged misstatement," imputing it from "other officers or directors who were involved in the dissemination of the fraud," or, in "exceedingly rare instances," where a statement is so "'dramatic[,]' . . . collective corporate scienter may be inferred." *Id.* at 98-99.

Reviewing their allegations holistically, we conclude that Appellants have not adequately pleaded facts sufficient to meet these standards. As the District Court concluded, the "alternative inference of nonfraudulent intent[,] that the [Appellees] did not see an issue in keeping the original form letter practice for pension risk transfer group annuitants[,] [is] more compelling." *Parchmann*, 2021 WL 320051, at *5.

We reach this conclusion by "weigh[ing] [Appellants'] scienter allegations as a whole," *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137 (2d Cir. 2021), and in considering Appellants' principal allegations, we are unable to draw strong inferences of scienter from them. Appellants rely heavily on the fact that in 2012, MetLife entered into a settlement agreement with regulators from several states concerning its failure to use the Social Security Administration's Death Master File to identify deceased individuals who had life insurance policies or annuity contracts with death benefits. The PRT Practice, however, concerned a separate issue: the methods MetLife used to identify

4

individuals who were entitled to annuity payments in their old age, not deceased individuals whose beneficiaries were entitled to death benefits. It would be a different story if, by continuing with the PRT Practice, MetLife were violating the terms of 2012 settlement agreement; but as Appellants concede, the 2012 settlement agreement did *not* cover the PRT Practice. *See* Appellants' Br. 10. Similarly, Appellants' reliance on MetLife's launch of an internal pilot program in August 2016 to locate missing annuitants does not support a strong inference of scienter. While Appellants maintain that MetLife's decision to launch this program indicates Appellees' knowledge that the PRT Practice was causing MetLife to overstate its profits, they fail to allege any facts strongly supporting this inference. We agree with the District Court in concluding that, as alleged, a nonfraudulent inference is more compelling — *i.e.*, that MetLife undertook the pilot program to determine *whether* the PRT Practice was indeed undercounting living annuitants and, if so, how better to identify those annuitants. *See Parchmann*, 2021 WL 320051, at *6 (labeling Appellants' theory "self-contradicting" because they "did not explain how [Appellees] could learn of the issue before the conclusion of the [pilot] [p]rogram").

Appellants do make allegations which support some inference of scienter, but even taken together, those allegations do not support a *strong* inference. For example, Appellants allege that the resignations of three MetLife executives in 2018 and 2019 support a finding of scienter. We have suggested that employees' "suspicious" resignations may be suggestive of scienter, but we have done so only in the context of other compelling circumstantial allegations supporting scienter, *In re Hain Celestial Grp.*, 20 F.4th at 137; *see also Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71, 77 (2d Cir. 2008) (summary order), something that is lacking here. Appellants also point to a September 26, 2016 Internal Audit Report which discusses "control weaknesses" concerning "retirement letter mailings (e.g. age 65 and 70.5)."[2] App'x 388, ¶ 72 (internal quotation marks omitted). Making all reasonable inferences in Appellants' favor, as we must, we credit Appellants' allegation that the report supports an inference that its recipients were (or should have been) alerted to possible issues concerning the PRT Practice; but this allegation cannot support the fraudulent intent or recklessness that Appellants ascribe to Appellees.

---

[2] The District Court concluded that the September 26, 2016 Internal Audit Report concerns a "different, unrelated issue," and declined to credit Appellants' scienter inference on that basis. *See Parchmann*, 2021 WL 320051, at *6. It did so, however, only by relying on a document — a June 29, 2016 audit report — that was submitted as an exhibit by Appellees alongside their motion to dismiss. That document was not cited in the Complaint, nor was the document "integral" to it. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) ("A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint." (internal quotation marks omitted)). Under these circumstances, we find that consideration of the June 29, 2016 document was improper and decline to consider it.

5

In sum, Appellants have failed to allege any specific facts suggesting that by employing the PRT Practice, Appellees intended to defraud their shareholders. Nor have they alleged specific facts showing that MetLife's use of the PRT Practice was "highly unreasonable" or "an extreme departure from the standards of ordinary care" so as to constitute recklessness. *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (internal quotation marks omitted). As Appellants alleged, and as Appellees conceded during oral argument, the PRT Practice and its fallout were not MetLife's "finest hour." App'x 409, ¶ 130; Oral Argument 10:29; *see also* App'x 409, ¶ 130 (quoting Kandarian as stating that MetLife "had an operational failure that never should have happened and it is deeply embarrassing"). But as we have said before, "[g]enerally, poor business judgment is not actionable under section 10(b) and Rule 10b-5." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).[3]

## III.

Finally, because stating a claim for controlling person liability under Section 20(a) requires a primary violation of the Exchange Act, *see S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), our conclusion that Appellants have not adequately pleaded a claim under Section 10(b) forecloses their Section 20(a) claim as well.

## IV.

For the foregoing reasons, the January 11, 2021 order and January 12, 2021 judgment of the District Court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] Because we conclude that Appellants have failed to plead scienter, we need not reach the parties' arguments concerning the alleged falsity of Appellees' relevant statements.